IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ERIK B. CHERDAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:11-cv-1311 |
| v. ) | |
| ) | |
| VOCK, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the Court are Defendants Curtis A. Vock and PhatRat Technology, LLC's ("Vock" and "PhatRat") Motion to Dismiss (Dkt. No. 39) and Motions for Judicial Notice (Dkt. Nos. 41, 87, and 89); the related Objection to the Cardenas-Navia declaration (Dkt. No. 104) and Objection and Motion to Strike the declaration of Jerry D. Voight (Dkt. Nos. 94 and 95, respectively); Defendant Nike, Inc.'s ("Nike") Motion to Dismiss Counts II, III, and IV of the Amended Complaint (Dkt. No. 54); Defendant Apple, Inc.'s ("Apple") Motion to Dismiss the Amended Complaint (Dkt. No. 59) and Plaintiff Cherdak's related request for Judicial Notice (Dkt. No. 100).

## BACKGROUND

Plaintiff Erik B. Cherdak ("Cherdak") alleges a four-count Amended Complaint against Defendants Vock, PhatRat, Apple, and Nike. Count I for patent infringement is alleged only against Apple and Nike. The remaining counts are answerable by all Defendants. Count II alleges an interfering patents claim under 35 U.S.C. § 291, Count III is a claim for declaratory relief, and Count IV alleges antitrust violations. Defendants PhatRat, Vock, and Apple move to dismiss each of the counts pled against them. Defendant Nike only moves to dismiss Counts II, III, and IV.

1

## ANALYSIS

### I. Fraud: the Basis for the Amended Complaint

Much, if not all, of the bases for the Amended Complaint are grounded in the fraudulent and inequitable conduct in which Defendant Vock allegedly engaged while pursuing two patents—U.S. Patent Nos. 5,636,146 (the "146 patent") and 5,960,380 (the "380 patent"), (collectively the "PhatRat patents"). Cherdak alleges that during the prosecution of the PhatRat patents, Vock made misstatements and omissions regarding prior art, namely Cherdak's 5,343,445 patent ("445 patent"), and that "but for" this inequitable conduct, the infringing and interfering PhatRat patents would not have issued. The Court disagrees.

Cherdak's 445 patent was before the Patent and Trade Office ("PTO") examiner during the prosecution of both the 146 and 380 patents. Indeed, the statements Vock made during the prosecution were an attempt to distinguish the PhatRat patents from the Cherdak patents. Initially, the PTO examiner found Vock's arguments unconvincing and rejected the PhatRat patents. In response, Vock altered, amended, and clarified the 146 and 380 patents, which were ultimately issued.

The Federal Circuit has repeatedly commented that attorney argument, advocating the attorney's "interpretations of its claims and the teachings of prior art," does not amount to an omission or misrepresentation. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008); *see also Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("The examiner had the Fossum Reference to refer to during the reexamination proceeding and initially rejected claim 1 based on that reference. Young argued against the rejection, and the examiner was free to reach his own conclusions and accept or reject Young's arguments. We therefore fail to see how the statements in the October 2005 Response, which consist of attorney argument and

an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact.").[1] Even presuming that each of the facts pled in the Amended Complaint is true, there are simply no indicia of fraud present.[2] The allegations in the Amended Complaint amount to nothing more than permissible attorney argument. Thus, any count within the Amended Complaint which is dependent on the presence of fraud, must also fail.

### II.  The Counts of the Complaint

#### a. Count I: Infringement

As discussed *supra*, Count I is pled only against Defendants Nike and Apple, and only Apple moves to dismiss this count. Cherdak claims that Apple infringes its 445 and 5,452,269 ("269") patents both independently and through its partnership with Nike. Patent infringement is prohibited under 35 U.S.C. § 271. Although the Court is not convinced that Cherdak sufficiently pled facts suggesting either direct infringement under § 271(a), or inducement under § 271(b), the Court finds that Cherdak's claim for contributory infringement under § 271(c) survives a motion to dismiss. Section 271(c) provides:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, *and not a staple article or commodity of commerce suitable for substantial noninfringing use*, shall be liable as a contributory infringer.

---

[1] Plaintiff alleges a similar story in relation to Apple's 8,036,851 patent ("851 patent"). For precisely the same reasons that the Court found Cherdak's argument unconvincing as to the PhatRat patents, the allegations also fail as to the 851 patent. The 445 patent was before the PTO examiner during the prosecution of the 851 patent. The examiner considered the disputed reference, and ultimately found that the prior art did not teach the same methods at issue in the 851 patent.

[2] Nor do the representations in this circumstance amount to "affirmative egregious misconduct." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011).

3

(emphasis added). The Court was not persuaded as to the existence of a substantial noninfringing use for Apple's Nike Sports Pack pursuant to 35 U.S.C. § 271 (c) that would be sufficient to warrant dismissal of the Plaintiff's infringement count at this stage of the litigation. Defendant instead argued that its products do not infringe any of the Cherdak patents. While this might ultimately prove true, the Court finds that it would be inappropriate to dismiss Count I under Rule 12, considering that, at this stage, all inferences are to be made in Plaintiff's favor.

### b. Count II: Interference

Count II of the Complaint alleges a claim for interference under 35 U.S.C. § 291 against all Defendants. Section 291 provides relief to "[t]he owner of an interfering patent . . . against the owner of another by civil action." "[T]he court may adjudge the question of the *validity* of any interfering patents, in whole or in part. . . ." 35 U.S.C. § 291 (emphasis added). The establishment of an interference-in-fact is a jurisdictional predicate to a § 291 claim. *See Albert v. Kevex Corp.*, 729 F.2d 757, 761 (Fed. Cir. 1984).

Interference-in-fact is determined by conducting a two-way test, determining (1) that invention A [of the Cherdak patent] either anticipates or renders obvious invention B [of the PhatRat patents], where A's claimed invention is presumed to be prior art vis-à-vis B and (2) that invention B either anticipates or renders obvious invention A, where invention B's claimed invention is presumed to be prior art vis-à-vis invention A. *Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 934 (Fed. Cir. 2003) (citations omitted). Essentially, the patents must claim "the same or substantially the same subject matter." *Slip Track Sys., Inc. v. Metal–Lite, Inc.*, 304 F.3d 1256, 1263 (Fed. Cir. 2002).

The Plaintiff carries a high burden when establishing interference-in-fact, and there is a presumption that patents are not interfering, particularly when the prior art before the court was

4

also before the PTO examiner. *See Microsoft Corp. v. i4i Ltd. P'ship*, --- U.S. ----, 131 S.Ct. 2238, 2250 (2011) (discussing an invalidity defense raised in an infringement action and noting that "because the heightened standard of proof applie[s] where the evidence before the court [i]s 'different' from that considered by the PTO, it applie[s] even more clearly where the evidence [i]s identical"); *Radio Corp. of Am. v. Radio Eng'g Lab.*, 293 U.S. 1, 2 (1934) ("[T]here is a presumption of validity, a presumption not to be overthrown except by clear and cogent evidence."); *Dooley Improvements v. Cent. Hanover Bank & Trust Co. of N.Y.*, 28 F.Supp. 531, 534 (D.D.C. 1939) ("[T]here is a recognized prima facie presumption that patents are not interfering.").

Here, not only did the PTO examiner consider Cherdak's 445 patent during the prosecution of the 380 and 146 patents, but the examiner considered the precise claims with which Plaintiff now finds issue. Indeed, the examiner initially rejected a number of the claims in the 146 patent as anticipated or obvious due to Cherdak's 445 patent, causing Vock to rewrite the 146 patent and amend the 380 patent to limit it to a "vehicle of the type which is ridden along the surface by a user of the vehicle" and to cancel all claims rejected on the basis of the 445 patent. The PTO ultimately issued a Notice of Allowability, indicating that the PTO considered the 445 patent and concluded that it neither anticipated nor rendered obvious any claim in the 136 or 380 patents. The Court agrees with the PTO.

Thus, because Plaintiff fails to meet his burden in showing that even the first part of the two-way test has been satisfied, i.e. that his patent anticipates or renders obvious either of the PhatRat patents, Plaintiff's § 291 interference claim must fail as it relates to the PhatRat patents, or any of the patents alleged to be interfering based on their relationship to the PhatRat patents.

Cherdak also claims that Apple's 8,036,851 patent ("851" patent) interferes with the 445 patent. However, the PTO examiner considered the 445 patent when examining the 851 patent and ultimately approved the 851 patent. Thus, the examiner concluded that the 851 patent was neither anticipated nor rendered obvious by the 445 patent. Again, the Court agrees. Apple's 851 patent measures the transition between two regions using a spectrum of signals. Cherdak's 445 patent senses pressure imparted to a shoe at different intervals. The patents do not cover "the same or substantially the same subject matter." *Slip Track Sys.*, 304 F.3d at 1263.

Finally, Cherdak claims that Nike's Blackadar patent, 6,298,314 ("Blackadar patent" or "314 patent") interferes with Cherdak's 445 patent. Again, the Court finds otherwise. Plaintiff's memorandum in response directs the Court to his attached exhibit where he outlines interference charts which he claims establish an interference-in-fact. Not so. Plaintiff has provided no reasoning that convinces the Court that the 445 patent anticipates or renders obvious the Blackadar patent, or vice versa. The Blackadar patent measures the amount of time a person spends running or walking, from first step to last. The 445 patent senses when a shoe leaves and returns to the ground. The Court finds no factual basis sufficient to establish a § 291 claim. Count II is dismissed as to all parties.

### c. Count III: Declaratory Judgment

Because Plaintiff's declaratory judgment count is predicated on either his § 291 claim or the alleged fraud, and because the Court has concluded that both of those bases lacked merit, the declaratory judgment Count is dismissed as to all Defendants.

Moreover, Plaintiff failed to plead a set of circumstances sufficient to sustain a claim for declaratory judgment in the first instance. The Declaratory Judgment Act provides that

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201. Although the precise controversy for Plaintiff's declaratory judgment count is not abundantly clear, it seems Plaintiff has suggested at most two potential sources for his claim. Plaintiff asks this Court to find that the PhatRat patents, and those patents in the PhatRat family, are invalid based on (i) the alleged fraudulent statements made before the PTO and/or (ii) Cherdak's § 291 claim.

As to the § 291 claim, the statutory provision itself provides any sort of relief that would be available to Plaintiff. *See* 35 U.S.C. § 291 ("[T]he court may adjudge the question of the validity of any interfering patents. . . ."). Thus an additional independent claim for declaratory judgment is superfluous and unsustainable.

Nor do the alleged fraudulent statements create an independent basis for declaratory relief. First, the presence of fraud in the procurement of a patent renders the patent *unenforceable*, rather than *invalid*. *See Therasense, Inc.*, 649 F.3d at 1288 ("Unlike *validity* defenses, which are claim specific, *see* 35 U.S.C. § 288, *inequitable conduct* regarding any single claim renders the entire patent *unenforceable*.") (emphasis added). Thus, even if the Court found that the relevant patents would not have issued but for the misrepresentations to the PTO, such a finding would not justify a finding that the patents are invalid.

Moreover, although the case or controversy requirement does not necessitate that a law suit, or counterclaim alleging infringement, have been filed against the declaratory plaintiff, affirmative enforcement-related activity is a prerequisite to declaratory jurisdiction. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1358 (Fed. Cir. 2004), *overruled on other grounds*, 546 U.S. 394 (2006) ("[I]f the patentee has done nothing but obtain a patent in a manner that the plaintiff believes is fraudulent, the courts lack jurisdiction to entertain either a

7

Declaratory Judgment Action or a *Walker Process* claim."). Contrary to Plaintiff's arguments, this understanding is not disputed in the Supreme Court's *MedImmune* decision. *See generally MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (noting that the pursuit of declaratory relief was appropriate because it was the declaratory plaintiff's own acts that prevented the imminent threat or harm). In fact, subsequent to the *MedImmune* decision, the Federal Circuit has recently affirmed that in order

> to establish an injury in fact traceable to the patentee, a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights, *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007), and (2) meaningful preparation to conduct potentially infringing activity, *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed. Cir. 2008).

*Ass'n for Molecular Pathology v. U.S. Patent and Trademark Office*, 653 F.3d 1329, 1343 (Fed. Cir. 2011), *vacated on other grounds*, --- S.Ct. ----, 2012 WL 986819 (Mar. 26, 2012). Plaintiff can point to no facts that convince the Court that any of the Defendants are interested in enforcing patent rights against Cherdak or that Cherdak has meaningfully prepared to conduct potentially infringing activity.

Ultimately, there is no basis upon which Cherdak can maintain a declaratory judgment cause of action, and Count III is dismissed as to all Defendants.

### d. Count IV: Antitrust Violations

Lastly, Cherdak claims that the controversy surrounding Defendants' fraudulently procured PhatRat patents constitutes an antitrust violation under the Sherman and Clayton Acts. Plaintiff alleges both a *Walker Process* claim and the presence of an illegal tying arrangement. Neither of these allegations sufficiently establishes an antitrust violation, and Count IV is dismissed as to all Defendants.

### i. *Walker Process* Claim

In *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965), the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present[, and that] [i]n such event the treble damage provisions of § 4 of the Clayton Act would be available to an injured party."

First, this Court determined and explained *supra* that the relevant patents were not procured by fraud. Given that there exists a heightened pleading requirement to establish fraud for a *Walker Process* claim, *see Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346-47 (Fed. Cir. 2007), this deficiency alone prevents Plaintiff's recovery.

Perhaps even more significantly, the alleged conduct of which Plaintiff complains is not the sort that Congress intended to prevent when establishing the Sherman and Clayton Acts. *See Assoc. 'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983) (noting that a Court should consider whether the plaintiff's alleged injury is "of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws" when determining if an antitrust claim should go forward).[3] Plaintiff has not alleged an antitrust injury. "As the legislative history shows, the Sherman Act was enacted to assure customers the benefits of price competition, and [the Supreme Court's] prior cases have emphasized the central

---

[3] Congressional intent is only one of the factors warranting consideration under the Supreme Court's antitrust standing inquiry. *See generally Assoc. 'd Gen. Contractors of Cal.*, 459 U.S. 519. The Fourth Circuit succinctly summarized the factors in *Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006). These include: "(1) the causal connection between an antitrust violation and harm to the plaintiffs, and whether that harm was intended; (2) whether the harm was of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws; (3) the directness of the alleged injury; (4) the existence of more direct victims of the alleged antitrust injury; and (5) problems of identifying damages and apportioning them among those directly and indirectly harmed." *Kloth*, 444 F.3d 312 (citing *Assoc. 'd Gen. Contractors of Cal.*, 459 U.S. 519) (internal citations and quotations omitted). Most, if not all, of these factors weigh in favor of dismissal. However, because the Amended Complaint is so gravely deficient as to the congressional intent prong, and because the Plaintiff has failed to establish the presence of fraud, the Court finds it unnecessary to address the remaining factors in any detail.

interest in protecting the economic freedom of participants in the relevant market." *Id.* The ability to enforce a patent is a recognized exception to the antitrust laws. Here, Plaintiff seeks only to substitute the monopoly power inherent in his patent in place of the Defendants' monopoly power. The essence of Plaintiff's argument is that he, rather than the Defendants, is entitled to the royalties available from licensing his patents. The antitrust laws are directed at protecting market competition, not at protecting the inherent monopoly power and benefits provided under intellectual property laws. In sum, the antitrust laws are not a proper avenue for the Plaintiff to seek redress.

### ii. Illegal Tying

Plaintiff also alleges that Defendants Nike and Apple are engaged in an illegal tying arrangement; namely, Plaintiff contends that if a consumer wants to purchase and use Nike+ technology, the consumer is "commanded" to purchase both Nike+ shoes and Apple "i" products.

> The Supreme Court has remarked that
>
> > the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms. When such "forcing" is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated.

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984), *overruled on other grounds*, *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).

Among other reasons, Cherdak's tying claim fails because he has not alleged facts showing the existence of any tying arrangement. Neither Nike nor Apple refuses to sell their product separately. A purchaser buying Nike shoes need not buy Apple's sports pack or other Apple products. In addition, although Apple contends that the relevant products work best with

Nike shoes, customers are not precluded from purchasing other shoes to use the Apple products at issue. "[W]here the buyer is free to take either product by itself there is no tying problem." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 7 n.4 (1958). Here, the buyer may purchase both the pertinent Nike and Apple products independently from the other. As a result, Plaintiff's claim for illegal tying is dismissed.

## CONCLUSION

Having considered the memoranda and the arguments made in open Court, it is hereby ORDERED that:

Each of the motions for judicial notice, Dkt. Nos. 41, 87, 89, and 100 are GRANTED;

The objections to the Cardenas-Navia declaration (Dkt. No. 104) and the Voight declaration (Dkt. No. 94) are OVERRULED, and the Motion to Strike the Voight declaration is DENIED. However, the Court will not take into account any impermissible legal argument within the declarations. *See Tafas v. Dudas*, 511 F. Supp. 2d 652, 662 (E.D. Va. 2007).

Defendants Vock and PhatRat's Motion to Dismiss (Dkt. No. 39) is GRANTED;

Defendant Nike's Motion to Dismiss (Dkt. No. 54) is GRANTED;

Defendant Apple's Motion to Dismiss (Dkt. No. 59) is GRANTED as to Counts II, III, and IV, but DENIED as to Count I.

In sum, Counts II through IV are DISMISSED WITH PREJUDICE as to all Defendants. Defendants Nike and Apple shall file their answers to Count I within 15 days.

An appropriate ORDER shall issue.

April 23, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge